UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH VASEQUEZ JR.,<br><br>Defendant. | No. 1:18-cr-00076-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 308) |

Pending before the court is defendant Joseph Vasquez Jr.'s motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") pandemic. (Doc. No. 308.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On September 19, 2019, defendant Vasquez was charged by way of a superseding indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One), distribution of 50 grams or more of actual methamphetamine or 500 grams or more of a mixture

or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Count Two), and distribution of 5 grams or more of actual methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Counts Three through Five).[1] (Doc. No. 187.) On October 3, 2019, following a jury trial, defendant was found guilty on all five counts and the jury found each of the controlled substance amount allegations to be true with respect to each count.[2] (Doc. Nos. 203, 204, 205, 209.)

The presentence report prepared following the jury's verdict summarized defendant's offense conduct, reporting that an investigation by law enforcement revealed that on four separate occasions between October 11, 2017 and December 28, 2017, defendant supplied over five pounds of methamphetamine in total to his coconspirator Ernest Westley who attempted to traffic the drugs from Modesto, California to Juneau, Alaska. (Doc. No. 239 (Presentence Report) at 6–7.) The four drug transactions involved the following amounts of methamphetamine: approximately 36 ounces on October 14, 2017 (Count Two); approximately 18 ounces on October 22, 2017 (Count Three); approximately 18 ounces on November 2, 2017 (Count Four); and approximately 18 ounces on December 28, 2017 (Count Five). (*Id.* at 7.) Execution of a search warrant at defendant's residence revealed a grow operation with 122 marijuana plants and 10 pounds of processed marijuana. (*Id.* at 8.) Defendant lived at that residence with his long-term girlfriend and their four minor children. (*Id.*) As a result, defendant's girlfriend was charged with possession with intent to distribute marijuana, as well as child endangerment. (*Id.*) The

---

[1] Defendant was originally charged by way of indictment, along with his codefendants, with a single count for conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. No. 1.)

[2] As a result of that verdict, defendant Vasquez faced sentences of a mandatory minimum term of imprisonment of 10 years up to a maximum of life on Counts One and Two and a mandatory minimum term of imprisonment of 5 years and up to a maximum of 40 years on each of Counts Three, Four and Five. (Doc. No. 239 at 24.) It should also be noted that defendant appealed from his judgment of conviction and sentence and that appeal is currently pending before the Ninth Circuit. (Doc. Nos. 244–48, 307.)

2

couples' four minor children were placed into the custody of Child Protective Services. (*Id.*)

The evidence introduced at defendant's trial showed that he was responsible for the distribution of approximately 995.4 grams of actual methamphetamine and 1,494.8 grams of methamphetamine. (Doc No. 239 (Presentence Report) at 9.) In addition, an upward adjustment in defendant's total offense level under the advisory sentencing guidelines was found to be appropriate because it was determined that he was a career offender due to his two prior felony convictions in state court involving controlled substances trafficking. (*Id.*) It was ultimately determined that under the U.S. Sentencing Guidelines, defendant Vasquez's adjusted offense level was 37 and his significant criminal history placed him in category VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 360 months and life. (*Id.* at 24.) The U.S. Probation Office recommended a below-guideline sentence of 320 months based upon defendant's prost-offense rehabilitation while on pretrial release including his successful completion of the court's Better Choices Court Program in May of 2019. (*Id.* at 6, 24–25.) On January 6, 2020, the court sentenced defendant to 320 months in prison on each count to run concurrently for a total term of imprisonment of 320 months, a 60-month term of supervised release to follow on each count to run concurrently for a total term of supervised release of 60 months, and a special assessment of $500. (Doc. Nos. 242; 243 at 2–3, 6.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") El Reno Federal Correctional Institution in El Reno, Oklahoma ("FCI El Reno"). *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Dec. 28, 2020). His projected release date is June 7, 2042. *Id.* On November 17, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 308.) On December 11, 2020, the government filed its opposition to the motion, and on December 18, 2020, defendant filed his reply thereto. (Doc. Nos. 316, 318.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

3

be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[3] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

/////

/////

---

[3] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[4]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[5]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling

---

[4] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[5] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

5

circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978–79 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

/////

/////

**A.      Administrative Exhaustion**

On September 8, 2020, defendant's counsel submitted an administrative request to the Warden at FCI El Reno seeking compassionate release based on defendant's medical conditions. (Doc. No. 308-5 at 2–3.) On September 14, 2020, the Warden at FCI El Reno denied defendant's request for compassionate release. (*Id.* at 4–5.) The government has taken the position that the administrative exhaustion requirement's 30-day window applies even when a warden responds within 30 days to a request for compassionate release. (Doc. No. 316 at 3–4.) The court questions whether that position is well taken. *See* note 2, above. Nonetheless, because a failure to exhaust administrative remedies where such is required is normally viewed as an affirmative defense, the government's concession as to exhaustion will be accepted. Therefore, the court will address the merits of defendant's pending motion below.

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[6] In determining a defendant's projected release date, courts may consider any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Vasquez argues that extraordinary and compelling reasons warranting his compassionate release exist due to medical conditions. To qualify for compassionate release,

---

[6] Because defendant Vasquez is only 33 years old, (*see* Doc. No. 239 (Presentence Report) at 4), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

8

defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI El Reno and the medical condition is one "from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). More specifically here, defendant argues that his obesity, hypertension, and status as a longtime smoker justify his release. (Doc. No. 308 at 3.) At the time of his sentencing, it was recognized that defendant suffered from high blood pressure. (Doc. No. 239 (Presentence Report) at 18.) Although defendant was documented as having a history of smoking marijuana and methamphetamine, the presentence report prepared in his case did not state that he was also a cigarette or tobacco smoker. (*See passim id.* at 18–19.) Further, defendant's reported height at the time of sentencing was 5'6" and his weight was 320 pounds. (*Id.* at 4.) Therefore, defendant's body mass index (BMI) at that time was 51.6 and he was therefore considered medically obese. *See Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Dec. 28, 2020). Defendant's BOP medical records confirm that he suffers from essential (primary) hypertension, for which he is prescribed medication, and that he is obese. (Doc. No. 311 at 9, 36, 40–41 (sealed).) Additionally, defendant's BOP medical records do document that he smoked "0.3" packages of cigarettes per day, or about two packages per week, for the last eight years. (*Id.* at 24.) Finally, the court observes that defendant has gained 40 pounds since his incarceration in this case commenced, which places his current BMI well above the previous 51.6. (*See id.* at 7.)

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant Vasquez is in fact at higher risk of suffering a severe illness were he to contract COVID-19 because of his "severe obesity." *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Dec. 28, 2020). And defendant "might be at an increased risk for severe illness" from COVID-19 because of he currently suffers from hypertension. *Id.* Additionally, according to the CDC, defendant is at higher risk because of his history of smoking cigarettes. *Id.*

9

(discussing "cigarette smoker[s]" only).  Although defendant's history of smoking places him at greater risk of contracting a severe illness from the virus, other courts have found that there are policy reasons why smoking by itself—especially with no supporting evidence that the history of smoking has caused significant health ailments—may not be an appropriate ground justifying compassionate release.  *See, e.g.*, *United States v. Green*, No. 17-20822, 2020 WL 6144556, at *5 (E.D. Mich. Oct. 20, 2020) ("And while smoking or prior smoking may indicate an increased risk of complications, especially if it caused another respiratory ailment, there are obvious policy reasons why courts may hesitate to find that being a former, or current, smoker supports finding extraordinary and compelling reasons for release.").  In this regard, the court observes that in March of this year, defendant's lungs were reportedly "[c]lear" according to his BOP medical records.  (Doc. No. 311 at 26 (sealed).)  Nonetheless, defendant does suffer from two comorbidities.  As the CDC recognizes, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."  *Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Dec. 28, 2020).

The court concludes that because of defendant's severe obesity and his hypertension, combined with the risk of infection from COVID-19, he is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  The remaining question then is whether defendant Vasquez's medical conditions "substantially diminish[] [his] ability . . . to provide self-care" in FCI El Reno.  *See id.*

The answer to that question—whether defendant has demonstrated that he is significantly hindered in providing himself with care while in prison—is a somewhat close call given his morbid obesity.  There appears to be scientific support for the proposition that obesity is one of COVID-19's deadliest comorbidities, particularly morbidly obese individuals who have a BMI of over 35.  (Doc. No. 308-4 at 2–7) (citing Meredith Wadman, *Why COVID-19 is more deadly in people with obesity—even if they're young*, SCIENCE MAGAZINE (Sept. 8, 2020), https://www.sciencemag.org/news/2020/09/why-covid-19-more-deadly-people-obesity-even-if-

10

theyre-young ("People with obesity should take extra care to avoid getting sick[.]").) In fact, the government concedes defendant has established that he is "substantially diminishe[d]" in his ability "to provide self-care" inside FCI El Reno due to his obesity and hypertension. (Doc. No. 316 at 9) (citing U.S.S.G. § 1b1.13, cmt. n.1 (A).) It is true that FCI El Reno suffered from a significant COVID-19 outbreak, with 299 inmates and 42 staff reported by BOP as having tested positive for the virus but recovered, while one inmate at that prison has died at the hands of the virus. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Dec. 28, 2020).[7] At the moment, however, there are only three staff members and only one inmate at that prison who are being reported as positive with active cases of COVID-19.[8] *Id.* Thus, FCI El Reno has apparently taken significant steps to reduce the number of COVID-19 cases at that prison to nearly zero.

While the court understands the heightened risk posed to defendant Vasquez if he were to contract COVID-19 because he is morbidly obese, it does not appear that he is "substantially diminishe[d]" in his ability to "provide self-care" at FCI El Reno at this time. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). This conclusion is grounded in part by the fact that his prison has drastically reduced the risk to inmates of contracting COVID-19. In mid-March of this year—which was likely before COVID-19 infiltrated FCI El Reno—the BOP's medical staff noted that defendant appeared "[w]ell, [a]lert and [o]riented[.]" (Doc. No. 311 at 8 (sealed).) Therefore, because defendant was conditioning well while in prison before the outbreak of the virus, and because FCI El Reno appears to presently have the COVID–19 outbreak at that prison under control, adding COVID-19 to the equation does not tip the scales in favor of defendant's compassionate release in this case. However, the court notes that if the conditions at FCI El Reno were to significantly change, i.e., the number of COVID-19 cases were to drastically increase, defendant Vasquez may conceivably be able to establish that he cannot properly care for himself

---

[7] FCI El Reno has a total population of 983 inmates. *FCI El Reno*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/ere/ (last visited Dec. 28, 2020).

[8] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

in prison because of his morbid obesity. At this point, however, the court does not find that extraordinary and compelling reasons exist to justify defendant's compassionate release pursuant to § 3582(c)(1)(A).

**C.      Consistency With the § 3553(a) Factors**

Even if defendant Vasquez's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a) in this case.[9] *Trent*, 2020 WL 1812242, at *2; *see also Parker*, 461 F. Supp. 3d at 981.

Defendant Vasquez was convicted of serious drug trafficking offenses involving the repeated distribution of methamphetamine intended to be transported across state lines. The instant offense was defendant's fourth for possessing controlled substances with the intent to distribute. (Doc. No. 239 (Presentence Report) at 11–13.) Defendant's three prior state-court drug trafficking convictions involved methamphetamine and firearms. (*Id.*) As the sentencing judge observed at the time of imposition of sentence in this case, defendant's criminal history involving drug trafficking is "extraordinary." (Doc. No. 252 (Sentencing Transcript) at 3:7.) The sentencing judge further stated that

> [defendant Vasquez] continues to do the same thing over and over again. He basically spits into the face of the system. He continues to be a drug dealer, and this is the fourth time.

/////

---

[9] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

> I mean, he's not learning, and the system and the community is paying a huge price for his lack of being a responsible, honorable, and law abiding citizen.

(*Id.* at 7:22–8:3.) With respect to defendant's offense conduct in this case, the sentencing judge considered defendant's "level of involvement in a very major drug transaction and organization[.]" (*Id.* at 16:5–6.) In addition to the offense for which defendant is serving his current sentence, the undersigned observes that a search of defendant's residence revealed there was a considerable marijuana operation at that location, which appears to have been maintained in the presence of four minor children. (Doc. No. 239 (Presentence Report) at 8.)

In short, defendant Vasquez was a frequent and significant drug trafficker who had numerous opportunities to learn from his past convictions but failed to do so. As noted above, the advisory U.S. Sentencing Guidelines called for a range of imprisonment in his case of between 360 months and life. (*Id.* at 24.) The sentencing court varied downward from that sentencing guideline range due to defendant's post-arrest rehabilitation in sentencing him to a total of 320 months in prison for all five counts of conviction. (Doc. Nos. 242; 243 at 2; 252 (Sentencing Transcript) at 16:10–12 ("[T]he Court should and does not ignore what appears to be a genuine attempt at reconciling his drug addiction.").) The undersigned concludes that the sentence imposed upon defendant was appropriate in light of the facts in this case.

To date, defendant has served approximately only 15 months in prison, or slightly above 5% of his total sentence accounting for good time credits. (Doc. No. 316-1 at 4.) Defendant has not served anywhere close to the mandatory minimum for any of the counts for which he was convicted. (*See* Doc. No. 239 (Presentence Report) at 24 (noting a mandatory minimum of 120 months for Counts One and Two, and 60 months for Counts Three through Five).) In the undersigned's view, a 15-month sentence (and a 305-month reduction of the sentence imposed) would simply not reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See* § 3553(a); *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an

additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).  Because the court concludes that granting defendant Vasquez's compassionate release at this time would be inconsistent with the appropriate consideration of the § 3553(a) sentencing factors, his motion will be denied on this basis as well.[10]

## CONCLUSION

For the reasons explained above, the court concludes that defendant Vasquez has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison.  However, even if the pending motion did establish such circumstances, the court also finds that the granting of release at this time is not consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, defendant's motion for compassionate release (Doc. No. 308) is denied.

IT IS SO ORDERED.

Dated:   **December 29, 2020**

_____
UNITED STATES DISTRICT JUDGE

---

[10] Defendant has suggested that the court could amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 308 at 1.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" and the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement").  The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020).  Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served and modify the conditions of supervised release to require home confinement for the remainder of his sentence.  The court is unwilling to do so for the reasons set forth above.  The BOP knows its capabilities to effectively and appropriately care for defendant Vasquez in a custodial setting.  If the BOP determines that defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard, the court trusts it will do so.  The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced at this time.