UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH VASQUEZ, JR.,<br><br>    Defendant. | Case No.  1:18-cr-00076-JLT-EPG-6<br><br>MEMORANDUM AND ORDER:<br><br>(1) DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255, (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY, and (3) DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR PLAINTIFF AND CLOSE THE CASE |

**I. INTRODUCTION**

Joseph Vasquez, Jr., movant hereunder, is a federal prisoner proceeding pro se on an amended 28 U.S.C. § 2255 motion filed on November 21, 2022, seeking to vacate, set aside, or correct the January 2020 judgment entered upon his conviction by a jury on all five counts in a superseding indictment for methamphetamine distribution and conspiracy.[1,2] (Doc. 391). The Court sentenced movant to a total 320 months in custody followed by 60 months of supervised release.[3]

---

[1] The Court finds the amended motion was timely filed; the government does not argue otherwise. 28 U.S.C. § 2255(f); U.S.S.C. Rule 13; (Doc. 415 at 15; *see also* Doc. 395).

[2] Reference to pagination is to CM/ECF system pagination.

[3] Movant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Allenwood Medium Federal Correctional Institution in White Deer, Pennsylvania ("FCI Allenwood"). *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited March 22, 2026). Movant's projected release date is July 31, 2042. *Id.*

1

(Docs. 242, 243). Movant's asserted grounds for relief are ineffective assistance of trial and appellate counsel.

On May 25, 2023, the government filed its amended opposition to the amended motion.[4] (Doc. 415). Movant replied to the opposition on October 16, 2023. (Doc. 420).  Having reviewed the amended motion, the record, the files, and the controlling law the Court finds that: (1) movant's constitutional claims are not a basis for relief, (2) an oral hearing on the amended motion is not warranted, and (3) a certificate of appealability shall not issue.

## II. FACTUAL BACKGROUND

During 2015 through early 2018, co-conspirators Alecia Trapps, Sheena Taylor, Jimmy Brantley, Carmen Conejo, Ernest Westley, and movant, trafficked controlled substances from Stanislaus and Sacramento Counties in California to Juneau, Alaska. Law enforcement investigated including by wiretap interceptions, surveillance, and controlled drug purchases. The wiretaps identified movant as a methamphetamine source of supply. Intercepted telephone conversations between co-conspirator Westley and movant discussed drug transactions involving 18 and/or 36-ounce quantities of methamphetamine on multiple occasions. The surveillance observed movant providing Westley with methamphetamine on four separate occasions. Based on testimony produced at trial, movant was responsible for distributing over five pounds of methamphetamine to Westley who attempted to traffic the drugs from Modesto, California to Juneau, Alaska.

## III. PROCEDURAL BACKGROUND

On September 19, 2019, movant was charged by way of a superseding indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One), distribution of 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and

---

[4] The Court granted the government's motion for a partial waiver of movant's attorney-client privilege regarding claimed ineffective assistance by movant's former trial counsel Kirk McAllister and former appellate counsel Verna Wefald. (Doc. 395).

(b)(1)(A)(viii) (Count Two), and distribution of 5 grams or more of actual methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Counts Three through Five). Following a 3-day jury trial, movant was found guilty on all five Counts and the jury found each of the controlled substance amount allegations to be true with respect to each Count.

The Presentencing Investigation Report applied an upward adjustment of movant's offense level under the sentencing guidelines, from offense level 34 to offense level 37, because movant was determined to be a career offender due to his two prior felony convictions in state court involving controlled substances trafficking. Movant's criminal history placed him in category VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 360 months and life. The U.S. Probation Office recommended a below-guideline sentence of 320 months based upon movant's post-offense rehabilitation while on pretrial release including his successful completion of the Court's Better Choices Court Program in May of 2019.

On January 6, 2020, the Court sentenced movant to 320 months in prison on each count to run concurrently for a total term of imprisonment of 320 months, a 60-month term of supervised release to follow on each Count to run concurrently for a total term of supervised release of 60 months, and a special assessment of $500.

On November 17, 2020, movant, through appellate counsel, filed in this proceeding a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 308.) The Court denied the motion on December 29, 2020[5].

On July 26, 2021, the Ninth Circuit affirmed movant's judgment of conviction, rejecting the claim that his sentence was substantively unreasonable because he was denied an individualized sentence and sentencing parity with his co-conspirators. On November 15, 2021, the Supreme Court denied movant's petition for certiorari.

## IV. LEGAL STANDARD

A person in custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a); *see also United States*

---

[5] This § 2255 motion (Doc. 384) was not determined on the merits.

*v. Hayman,* 342 U.S. 205, 217 (1952). The permissible grounds for a motion under § 2255 are "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. . . ." 28 U.S.C. § 2255(a).

To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht's* harmless error standard applies to habeas cases under § 2255[.]"). Relief on an asserted error of law is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 345-46 (1974) (citing *Hill v. United States*, 368 U.S. 424, 428-29 (1962)).

"Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief); *Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of § 2255 motion where the allegations regarding ineffective assistance of counsel were entirely conclusory and without support in the record).

If a court finds that relief is warranted under § 2255, it must " 'vacate and set the judgment aside' " and then do one of four things: " 'discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.' " *United States v. Barron,* 172 F.3d 1153, 1157 (9th Cir. 1999) (quoting 28 U.S.C. § 2255).

## V.   ANALYSIS

### A.   Ineffective Assistance - Trial Counsel

Movant claims multiple grounds upon which trial counsel Kirk McAllister was ineffective during the guilt and sentencing phases.

To prevail on claimed ineffective assistance of counsel, a defendant must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A

defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining process, including the decision whether to accept or reject a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). The negotiation of a plea bargain is a "critical phase of litigation" for purposes of the Sixth Amendment right to effective assistance of counsel. *Padilla v. Kentucky,* 559 U.S. 356, 373 (2010) (citing *Hill,* 474 U.S. at 57). The law governing ineffective assistance of counsel claims is clearly established. *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998). In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 694.

First, "deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 688). The defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *See Strickland*, 466 U.S. at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) (same). There is a strong presumption that counsel's performance fell within the wide range of professional assistance. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 677-78; *Quintero-Barraza*, 78 F.3d at 1348; *see also Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, to demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003) (same); *see also Premo v. Moore*, 562 U.S. 115, 125 (2011) ("[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices

5

an attorney made at the plea bargain stage.").

   1.   **Guilt Phase**

           a.   ***Plea versus Trial***

Movant alleges McAllister failed to: investigate the defense, make pretrial motions, and communicate the consequences of taking a plea versus going to trial. (Doc. 391 at 25-28). Movant argues McAllister failed to consult with him "about the means to be used" should he "opt to plead guilty or proceed to trial." (*Id*. at 26). Movant argues McAllister advocated for a guilty plea, miscalculated sentencing exposure, and developed no strategic defense. (*Id.* at 25-32). Particularly, movant argues that McAllister failed to: advise him regarding career offender status, challenge admission of wiretap evidence, and negotiate a more favorable plea agreement. (*Id.*).  Additionally, movant states that he "relied on counsel's erroneous advice to his detriment[,] and that had he been properly advised "there is a reasonable probability" that "he would have pled guilty" in exchange for a more favorable sentence. (*Id.* at 28, 32). The Court finds that movant raises only conclusory allegations and conjecture unsupported in the record, falling short of any colorable claim.

McAllister attests to his trial investigation that included reviewing government disclosure and discovery. (Doc. 415 at 55-58). McAllister retained an investigator to assist in defensing the charges by impeaching the government's cooperating witness, co-conspirator Westley. (*Id.)*. McAllister prepared a statement of facts of the case and reviewed that with movant. (Doc. 415 at 59-61).

McAllister attempted negotiation of and received from the government initial and revised plea agreements. (Doc. 415 at 31-53). The initial  plea agreement offered movant a plea to the conspiracy alleged in the indictment (Count One) and set out a career offender guideline calculation with an estimated guideline range of 324-405 months.  (Doc. 415 at 31-41). The revised plea agreement offered a plea to Count One of an information, distribution of methamphetamine and set out a base offense level of 37 based on movant's status as a career offender with a lower adjusted offense level than the first plea agreement, resulting in an estimated guideline range of 262-327 months, with the government agreeing to recommend  a three-level downward adjustment for acceptance of responsibility and sentence at the low end of the guideline range. (Doc. 415 at 44-53).

McAllister gave movant a copy of the revised plea agreement and reviewed it and the

government's case with him, including as to the sentencing guidelines, career offender status, and criminal history. Movant concedes McAllister advised him to "plead guilty and take 276-324 (sic) months' imprisonment because if he proceeds to trial, he would be given a longer sentence[.]" (Doc. 391 at 27). Still, movant refused to take a plea.

McAllister prepared a rejection of plea agreement form and reviewed that with movant including as to issues of career offender status, an open plea and cooperating, and issues if movant were to go to trial. (Doc. 415 at 62-63). Movant reiterated his position that he wanted to go to trial and signed the rejection of plea agreement form. (*Id*.).

Movant's argument that McAllister errantly advised him regarding sentencing exposure including career status is unsubstantiated in the record. (Doc. 391 at 26; *see* section V A 2, post). Movant has not overcome the presumption that McAllister's conduct was reasonable and strategically motivated. *See Strickland*, 466 U.S. at 689 ("[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance); *Morrison*, 477 U.S. at 381 (same); *see also United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002) ("L]itigation tactics are decisions generally left to defense counsel."). Additionally, movant does not point to facts that absent McAllister's allegedly deficient conduct, there is a reasonably probability of a more favorable outcome in the context of plea negotiations. *Lafler*, 566 U.S. at 163; *Strickland*, 466 U.S. at 694. The record does not support, even inferentially, that movant would have taken a plea. *See Missouri* v. *Frye*, 566 U.S. 134,  147 (2012) (a petitioner must demonstrate that (1) he would have accepted the earlier plea offer had he been afforded effective assistance of counsel; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed).

Significantly, movant concedes that at the time of trial, he believed "he would not [have gotten] a longer sentence should he opt to proceed to trial." (Doc. 391 at 26). Movant explains that he "wanted to prove his innocence by proceeding to trial" and simply relied on counsel to prepare a defense including by challenging the wiretap evidence. (*Id*., at 27). Movant explains that he proceeded to trial "in hopes of receiving a lesser sentence based upon the jury's mercy and

leniency[.]" (Doc. 391 at 32). Notably and as the government observes, appellate counsel chose not to raise this claim on direct appeal. (*See* Doc. 415 at 70).

### b.    Trial Defense

Movant alleges McAllister failed to investigate the defense and make appropriate pretrial motions. Particularly, movant argues that McAllister failed to file a substantive motion to suppress the wiretap evidence on Fourth Amendment grounds. (Doc. 391 at 27-28). Movant suggests the Court did not review the affidavits in support of the wiretaps and that there was no probable cause because "the main purpose" of the wiretap was to identify him as a co-conspirator, but the wiretap in fact "was used against him to create a warrant of arrest." (Doc. 391 at 27-28). Movant also suggests that the wiretap evidence was opinion evidence and cumulative. (Doc. 391 at 32).

The Court finds movant points only to conclusory allegations and conjecture unsupported in the record, falling short of any colorable claim. The record reflects that McAllister reviewed all the discovery and listened to the intercepted calls between the various co-conspirators. (Doc. 415 at 55-58). As noted, McAllister also hired a private investigator to assist by looking into co-conspirator Westley who was expected to testify at trial. (*Id.*). McAllister outlined the facts of the case relating to the wiretap transcripts and reviewed them with movant. (*Id.* at 55-61). McAllister also reviewed with movant his defense strategy of attacking the credibility of co-conspirator Westley, discussing also whether movant would take the stand. (*Id.* at 55-58).

McAllister avers that he found no meritorious basis on which to contest admission of the wiretaps evidence.[6] (Doc. 415 at 55-58). McAllister was under no obligation to make frivolous motions. *See United States v. Medrano*, 2019 WL 415040, at *5 (E.D. Cal. Feb. 1, 2019), *report and recommendation adopted sub nom. United States v. Mario Medrano*, 2019 WL 2433914 (E.D. Cal. June 11, 2019) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (`973) (counsel is under no obligation to make frivolous motions or advise a defendant of every conceivable constitutional attack he might mount).

The record further reflects the parties stipulated to authorized wiretaps of the target telephones and to the authenticity, accuracy, and admissibility of the wireless communications

---

[6] Appellate counsel came to the same conclusion. (*See* Doc. 415 at 65-70).

intercepted in the case including audio of the phone calls and text messages and transcripts thereof. (Doc. 197; *see also* Doc. 258 at 91-101 [stipulation to authenticity of intercepted communications], 166-67 [stipulation to court authorized wiretaps on co-conspirator target phones]; Doc. 259 at 53-57 [stipulation to court authorized wiretaps on co-conspirator target phone and transcript of intercepted communication with movant of November 16, 2017]; Doc. 259 at 68-76, 81-82 [stipulation to authorized wiretap of movant's phone from December 26, 2017 to January 12, 2018 and transcript of communications]). Also, the government proffered testimony of FBI case agent Brian Huberty regarding the investigative need for and use of authorized wiretaps in this case given the criminal enterprise. (Doc. 259 at 189-204).

McAllister filed numerous pretrial motions including to: sever movant's case from his co-conspirators, preclude evidence of gang involvement, exclude testimony by law enforcement experts, preclude admission of co-conspirator hearsay, and access discovery disclosure of *Brady*, *Giglio*, and early production of *Jencks* material. (Docs. 140-147; Doc. 415 at 55-58).

McAllister cross-examined co-conspirator Westley regarding his credibility, particularly as to his plea agreement and any benefits thereunder as a cooperating government witness. (Doc. 259 at 167-80). McAllister also cross-examined case agent Huberty and elicited that law enforcement did not see any methamphetamine in the possession of movant during surveillance on the four occasions he met with Westley, i.e., October 14, 22, November 2, and December 28, 2017. (Doc. 260 at 26-27).

Movant has not proffered facts overcoming the presumption that McAllister's actions and strategic decisions were reasonable. *See Strickland*, 466 U.S. at 690 (counsel is "strongly presumed" to make decisions in the exercise of professional judgment); *see also. Smith*, 282 F.3d at 763. For example, movant's belief the wiretaps were improper or unsupported by probable cause because his identity was otherwise known to the government, is unsupported factually and legally. (Doc. 391 at 27-28); U.S. Const. amend. IV; 18 U.S.C. §§2510-2518. Movant's argument that the government presented improper opinion and prejudicially cumulative evidence in relation to the wiretaps is undeveloped on the record, unsupported by legal authority, and merely conclusory.

Additionally, movant does not point to facts of prejudice, that absent McAllister's allegedly deficient conduct, there is a reasonably probability of a more favorable outcome in the context of

9

trial. *Lafler*, 566 U.S. at 163; *Strickland*, 466 U.S. at 694. The surveillance evidence and testimony presented at trial largely covered the same ground as the wiretap evidence. For example, the government points to Westley's testimony that he met with movant and obtained methamphetamine from movant on behalf of co-conspirator Trapps. (*See* Doc. 415 at 24 citing Doc. 259 at 136-66). The government's surveillance evidence covers the same ground. (*See* Doc. 258 at 105-07; Doc. 259 at 10-15; 20-36; 39-42; 48-51; Doc. 259 at 58-66, 76-80). Also, two scales of a type customarily used to confirm weights of narcotics were found at movant's residence during a warranted search on April 11, 2018. (Doc. 259 at 83-94, 103-08).

### 2.    Sentencing Phase

#### a.    PSR & Sentencing

Movant alleges that McAllister failed to: review the PSR with him and explain it to him, appropriately object to the PSR including as to career offender enhancement and criminal history category and argue for mitigation or downward variance from the determined guidelines range of 360 months to life. (Doc. 391 at 32-36 citing 18 U.S.C. §§ 924(e)(2); 3553(a)). Movant argues that his below guidelines sentence of 320 months is nonetheless substantively unreasonable. He argues that absent of admission of wiretap evidence and application of career offender guidelines, an offense level 34 and criminal history category IV would have resulted in a guideline range of 210-262 months. (*Id*.). The Court finds movant's allegations are unsupported on the factual record and fall short of any colorable claim. McAllister avers that he discussed the PSR with movant, who had no questions. (Doc. 415 at 55-58). Movant confirmed as much during his sentencing colloquy with the Court. (Doc. 252 at 2).

The PSR applied the 2018 sentencing guidelines and determined movant's prior convictions for possession of controlled substance for sale (Stanislaus County Superior Court, Docket Numbers 123080 (36 month custodial sentence) and 1415992 (2 year custodial sentence), as reflected in movant's criminal history in the PSR, to be qualifying predicate offenses for purposes of the career offender enhancement.[7] Movant has not proffered facts sufficient to overcome McAllister's

---

[7] "(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior

presumed competence in his determination not to challenge the PSR's career offender enhancement. Particularly, movant's argument that McAllister should have objected to the use of these prior convictions as qualifying prior "controlled substance offenses" on grounds the First Step Act of 2018 changed the definition of "controlled substance offenses" in § 4B1.1(a), such that he was not a career offender based upon his time served, lacks merit. (*See* Doc. 391 at 34-35, citing 18 U.S.C. § 924(e)(2) (defining a "serious drug offense" for purposes of 18 U.S.C. § 922(g)).

"The First Step Act does not change whether prior convictions qualify as controlled substance offenses under § 4B1.1(a)." *United States v. Ochoa*, 2023 WL 6787443, at *4 (C.D. Cal. Feb. 23, 2023) (citing *United States v. Wiseman*, 932 F.3d 411, 420 (6th Cir. 2019)). As noted, the guidelines define a "controlled substance offense" as, among other things, an offense "punishable" by imprisonment for a term exceeding one year. U.S.S.G. § 4B1.2(b). The 2018 Sentencing Guidelines explained that a conviction qualifies as an offense "regardless of the actual sentence imposed." *See* U.S.S.G. § 4B1.2 n.1.

Moreover, in the sentencing memorandum, McAllister argued against career offender enhancement on reasonableness grounds, suggesting the staleness of these prior convictions and the insubstantiality of punishment movant received. (*See* Doc. 240 at 2-6). McAllister argued for a variance from the sentencing range of 360 months to life based on the § 3553(a) factors, including disparity of sentences among co-conspirators and relative culpability, and movant's positive rehabilitative conduct while on supervised release prior to trial. (*Id.*; Doc. 252 at 4-8; *see also* Doc. 415 at 55-58). McAllister submitted to the sentencing court certificates showing movant's efforts during post arrest rehabilitation. (Doc. 240-1). McAllister sought a sentence in the area of the mandatory minimum for the offenses. (Doc. 240 at 7). McAllister repeated these arguments at the sentencing hearing. (Doc. 240; Doc. 252 at 4-7). Movant has not overcome the presumption that McAllister acted reasonably. *See Strickland*, 466 U.S. at 689; *Morrison*, 477 U.S. at 381; *Smith*, 282 F.3d at 763.

---

felony convictions of either a crime of violence or a controlled substance offense." US.S.G. 4B1.1. "A controlled substance offense is an offense punishable by imprisonment for a term exceeding one year." U.S.S.G. 4B1.2(b).

Additionally, movant has not shown on the record that absent McAllister's allegedly deficient performance in context of the PSR, there was a reasonable probability of a more favorable sentencing outcome. Notably, the Court at sentencing pointed to movant's level of involvement in a major drug transaction and the organization involved, and movant's prior drug trafficking convictions. (Doc. 252 at 16-17). The Court also noted movant's failure to accept responsibility. (*Id.*). Even without a downward adjustment for acceptance of responsibility *(see* Doc. 239 at 9), movant received a sentence 40 months below the guideline minimum sentence.

Finally, it is clear from the record that the Court sentenced movant on an individualized basis. (*See e.g.*, Doc. 252 at 3-17). The Court considered the § 3553(a) factors, observing both movant's good behavior on supervised release, and that it was extraordinary the instant conviction was movant's fourth drug trafficking conviction – observing the impact of movant's crimes on others.[8] (Doc. 252 at 3-11). As discussed below, the Ninth Circuit affirmed the reasonableness of movant's 320 month custodial sentence on appeal. (*See* section V B 1, post).

**B.    Ineffective Assistance - Appellate Counsel**

Movant claims multiple grounds upon which appellate counsel Verna Wefald was ineffective during direct appeal and in separately seeking compassionate release before this Court.

The legal standard for ineffective assistance of counsel is set out above. (*See* section V A, ante). The *Strickland* standards apply to appellate counsel as well as trial counsel. *United States v. Morales,* 2021 WL 6064672, at *9 (E.D. Cal. Dec. 22, 2021) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989)). To obtain relief on a claim of ineffective assistance of appellate counsel, an appellant "must show that counsel's [representation] fell below an objective standard of reasonableness, and that there is a reasonable probability that, but

---

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

for counsel's unprofessional errors, [appellant] would have prevailed on appeal." *Miller*, 882 F.2d at 1434) (citing *Strickland*, 466 U.S. at 688, 694).

When asserting counsel was objectively unreasonable for failing "to raise a particular claim" on appeal, a petitioner must demonstrate that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith*, 528 U.S. at 288 (holding "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."); *see also Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (holding performance ineffective where appellate counsel "raised only a single, weak issue, notwithstanding the fact that a substantial, meritorious Fifth Amendment issue was obvious upon even a casual reading of the trial transcript").

When evaluating appellate counsel's decision to prioritize some claims over others, a court conducting habeas review must consult the trial record and consider "the potential strategic choices" counsel could have made to determine whether "counsel's conduct falls within the wide range of reasonable professional assistance." *Wilkins v. Macomber,* 2022 WL 912958, at *41 (N.D. Cal. March 29, 2022) (citing *Paul v. Pennywell*, 612 F. App'x 453 (9th Cir. 2015)) [unpublished]; *see also Jones v. Barnes,* 463 U.S. 745, 751-52 (1983) ("[E]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986) ("[T]he right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the trial record supports.").

### 1. Direct Appeal

Movant alleges that Wefald was ineffective by failing to: investigate the appeal, communicate with him, provide him with the record on appeal, and raise stronger grounds for appeal such as insufficient evidence supporting Count I due to buyer-seller theory and inapplicability of the career offender enhancement. (Doc. 391 at 38). Movant also suggests other unspecified meritorious issues should have been raised on appeal. (*Id*.). Wefald raised to the Ninth Circuit the substantive unreasonableness of movant's 320-month sentence, arguing that: the sentence was not an individualized assessment that considered movant's rehabilitative efforts, and the sentence reflected

13

an unwarranted sentencing disparity with co-conspirator(s). (Doc. 415 at 65-70). The Ninth Circuit affirmed movant's sentence in an unpublished memorandum disposition on July 26, 2021. (*See* Doc. 339). The Circuit stated that:

> The district court did not abuse its discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). The record makes clear that the court accounted for Vasquez's rehabilitation efforts by granting a downward variance, but concluded that a further variance was not warranted because of the role Vasquez played in the drug conspiracy and his previous convictions for drug trafficking. Contrary to Vasquez's argument, the court conducted an individualized assessment of the 18 U.S.C. § 3553(a) sentencing factors, and the below-Guidelines sentence is substantively reasonable in light of those factors and the totality of the circumstances. *See Gall*, 552 U.S. at 51. Moreover, the alleged sentencing disparity is not unwarranted because Vasquez is not similarly situated to his co-defendant. *See United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014).

(Doc. 339 at 2).

The Court finds that movant has not overcome the presumption that Wefald's strategic decisions on appeal were reasonable. *See Strickland*, 466 U.S. at 689; *Morrison*, 477 U.S. at 381; *see also. Smith*, 282 F.3d at 763. Wefald attests to her investigation, development, and claim presentation based on her judement as to relative merit. (Doc. 415 at 65-70). Welfald avers that she communicated with movant on numerous occasions and provided him with trial transcripts and unsealed Court pleadings. (Doc. 415 at 65-70). Wefald avers that she considered movant's desire to raise issues including career offender status, sufficiency of evidence including the buyer-seller defense presented at trial, and the unreasonableness of his sentence. (*Id*.) However, Wefald states that she made the strategic decision based on her review of the trial transcripts, the wiretap transcripts, and the pretrial motions and rulings, that only issue in the case for appeal was the reasonableness of movant's 320 month sentence. (Doc. 415 at 65-70). Movant does not point to facts in the record overcoming the *Strickland* presumption of reasonableness. (*See* section V A, post); *Strickland*, 466 U.S. at 689; *Morrison*, 477 U.S. at 381; *see also. Smith*, 282 F.3d at 763.

Moreover, the Circuit's affirmance of movant's sentence as substantively reasonable is law of the case and not subject to relitigation. *See United States v. Israel Washington*, 2024 WL 4753760, at *2 (E.D. Cal. Nov. 12, 2024), *report and recommendation adopted sub nom. United States v. Washington*, 2025 WL 1359075 (E.D. Cal. May 9, 2025) (citing *Richardson v. United States*, 841

F.2d 993, 996 (9th Cir. 1988)) (under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case); *see also United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) ("Issues that a district court determines during pretrial motions become law of the case."). Additionally, nothing before the Court suggests a reasonable probability that absent appellate counsel's allegedly deficient conduct, movant would have realized a more favorable outcome on appeal.

### 2.    Compassionate Release Motion

Movant alleges that Wefald was ineffective as appellate counsel by filing the noted compassionate release motion with this Court. (Doc. 391 at 36-38). However, the record shows the compassionate release motion was not part of movant's appeal but rather filed by Wefald at the request of movant's family in the context of the COVID pandemic. (Doc. 415 at 65-70). The compassionate release motion was in addition to the appeal. (*Id.*; *see also* Doc. 308).

The Court finds that movant has not overcome the presumption that Wefald's strategic decisions on appeal were reasonable as discussed above, and her filing of the compassionate release motion is not a reason to find otherwise. (*See* section V B 1, ante); *Strickland*, 466 U.S. at 689; *Morrison*, 477 U.S. at 381; *see also. Smith*, 282 F.3d at 763.

### C.    Evidentiary Hearing

Movant has requested an evidentiary hearing. (Doc. 391 at 38.)Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255); *see also United States v. Jaramillo*, 2025 WL 2462728, at *20  (E.D. Cal. 2025) (same). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *Rodriguez*, 49 F.4th at 1213. To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id.* "The Ninth Circuit's rule is that merely conclusory statements in a § 2255 motion are not enough to require a hearing." *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

Therefore, a § 2255 motion does not automatically entitle a movant to a hearing if the issues can be conclusively decided on the basis of the evidence in the motion, files, and records. *Blackledge v. Allison,* 431 U.S. 63, 80-82 (1977); 28 U.S.C. § 2255(b); *see also United States v. Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Rule 8(a), Rules Governing Section 2255 Proceedings (the court must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted); *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (§ 2255 hearing required unless motion, files, and records conclusively show movant is not entitled to relief). The district court exercises its discretion and common sense in determining whether a hearing is necessary. *U.S. v. Tate*, 523 F. Supp. 2d 165, 169 (D. Conn. 2007); *see also U.S. v. Martinez*, 475 F. Supp. 2d 154, 161 (D. Conn. 2007) (a district court is permitted to dispose of a motion to vacate without hearing where the case records demonstrate the movant's claims lack merit).

Here, the Court finds that on the undisputed facts and evidence before it, movant is not entitled to a § 2255 hearing because his claims are not a basis for relief. The motion may be denied as a matter of law without a hearing. *See Leonti*, 326 F.3d at 1116 (defendant filing a motion to vacate is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief); *see also U.S. v. Rodriguez-Vega*, 797 F.3d 781, 791 (9th Cir. 2015) ("An oral hearing is not necessary in all cases."); *cf. United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022) (evidentiary hearing necessary on § 2255 motion to determine factual questions underlying prejudice to overcome procedural default); *Iaea v. Sunn*, 800 F.2d 861, 865-66 (9th Cir. 1986) (remanding "for an evidentiary hearing to determine whether there is a reasonable probability Iaea would not have pled guilty absent counsel's erroneous advice").

Movant does not raise a dispute of record facts or raise a dispute of extra-record evidence. Movant's allegations are unsupported in fact and contrary to the declarations of McAllister and Wefald. "Mere conclusory allegations do not warrant an evidentiary hearing." *See Shah*, 878 F.2d at 1161. Therefore, the Court finds that an oral hearing on the § 2255 motion is not necessary.

16

**D.      Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2255. A court may issue a certificate of appealability where the moving party has made a substantial showing of the denial of a constitutional right, and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Here, the Court finds that movant has not made a substantial showing of the denial of a constitutional right, for the reasons stated. Furthermore, based on the foregoing, movant cannot show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**VI. CONCLUSIONS**

Movant fails to state a claim for relief under 28 U.S.C. § 2255 on the asserted grounds of ineffective assistance by trial and appellate counsel. Movant is not entitled to an oral hearing on the instant motion.  Movant is not entitled to a certificate of appealability.  Thus, the Court **ORDERS:**

1.      The motion for 28 U.S.C. § 2255 relief (Doc. 391) is **DENIED**.

2.      The Court **DECLINES** issuance of a certificate of appealability.

3.      The Clerk of the Court is directed to enter judgment for the government and to close the case.

IT IS SO ORDERED.

Dated:   **March 26, 2026**

UNITED STATES DISTRICT JUDGE